Tanya L. Greene (Cal. Bar No. 267975)
tgreene@mcguirewoods.com
Nicholas J. Hoffman (Cal. Bar No. 284472)
nhoffman@mcguirewoods.com
McGUIREWOODS LLP
355 South Grand Ave., Suite 4200
Los Angeles, CA  90071-3103
Telephone: (213) 627-2268
Facsimile: (213) 627-2579

Lucy Jewett Wheatley (admitted *Pro Hac Vice*)
lwheatley@mcguirewoods.com
Claire Hagan Eller (admitted *Pro Hac Vice*)
celler@mcguirewoods.com
McGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-4320
Facsimile: (804) 698-2017

Attorneys for Plaintiffs Vans, Inc. and VF Outdoor, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANS, INC.; and VF OUTDOOR, LLC,<br><br>        Plaintiffs,<br><br>        vs.<br><br>WALMART, INC.; THE DOLL MAKER, LLC; and TRENDY TRADING, LLC,<br><br>        Defendants. | Case No. 8:21-cv-01876 -DOC-KES<br><br>Hon David O. Carter<br><br>**PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE TO DEFENDANT WALMART, INC. RE: CIVIL CONTEMPT AND SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration and Proposed Order Filed concurrently]<br><br>Date:   August 22, 2022<br>Time:  8:30 a.m.<br>Court: 10A<br><br>Complaint Filed:    11/15/2021 |

**TO DEFENDANT WALMART, INC. AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on August 22, 2022, at 8:30 a.m., or as soon thereafter as the parties may be heard in Courtroom 10A of the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, CA, 92701, Plaintiffs Vans, Inc. and VF Outdoor, LLC (collectively, "Vans"), by and through their undersigned counsel, will and hereby do move for an order to show cause why Defendant Walmart, Inc. ("Walmart") should not be held in civil contempt for failing to comply with the Court's Preliminary Injunction (Dkt. 65). This motion seeks relief pursuant to the Court's "inherent power to enforce compliance with [its] lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

The motion seeks an order of civil contempt and sanctions for Walmart's continued failure to comply with the provision of this Court's March 31, 2022 Permanent Injunction that specifically enjoins Walmart from "advertising, marketing, importing, manufacturing, promoting, offering for sale, distributing, or selling the [set of pictured] sneakers, any other colorways of the same shoe designs, [or] colorable imitations of the [pictured] shoes." *See* Order (Dkt. 65) at 27. Walmart has violated this order by continuing to advertise, market, manufacture, promote, offer, and sell shoes that are specifically pictured and identified in this order along with colorable imitations of those shoes, as well as by using marks that are substantially similar to Vans' protected intellectual property.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which was conducted through correspondence dated May 2, 2022, May 13, 2022, June 24, 2022, July 5, 2022, July 10, 2022, and July 14, 2022.

# **TABLE OF CONTENTS**

Page

MEMORANDUM AND POINTS OF AUTHORITIES.......................................... 1

I.      INTRODUCTION ........................................................................ 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY.................... 1

III.    LEGAL STANDARD .................................................................... 7

IV.     ARGUMENT ............................................................................. 8

    A.    Walmart is Violating the Injunction Order and Continues its Unauthorized Use of Vans' Trademarks and Trade Dress in a Manner Likely to Cause Consumer Confusion.................................. 8

        1.    Walmart is Violating the Order by Selling its "No Boundaries" Shoes Online............................................................. 9

        2.    Walmart is Violating the Order by Selling Modified Side Stripe Shoe Styles both Online and in Retail Stores. ............. 12

        3.    Walmart Retail Stores Continue to Offer and Advertise Shoes Specifically Covered by the Injunction. ................................. 16

    B.    Walmart has Failed to Take Reasonable Steps to Comply with the Injunction. ........................................................................... 19

    C.    Sanctions are Warranted ................................................... 21

        1.    Walmart Should be Ordered to Pay Vans' Attorneys' Fees and Costs Incurred in Connection with this Motion. ................... 22

        2.    The Court Should Impose a Schedule of Fines to Compel Walmart's Compliance. .......................................................... 23

V.      CONCLUSION ......................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Citronelle-Mobile Gathering, Inc. v. Watkins*,
    943 F.2d 1297 (11th Cir. 1991) .................................................................8

*FTC v. Affordable Media*,
    179 F.3d 1228 (9th Cir. 1999) .................................................................20

*FTC v. Enforma Natural Prods., Inc.*,
    362 F.3d 1204 (9th Cir. 2004)...................................................................8

*General Signal Corp. v. Donallco, Inc.*,
    787 F.2d 1376 (9th Cir. 1986) .................................................................23

*Go-Video, Inc. v. Motion Picture Ass'n of America*,
    10 F.3d 693 (9th Cir. 1993).......................................................................7

*Harcourt Brace Jovanovich Legal & Prof'l Publ'ns v. Multistate*
    *Legal Studies*, 26 F.3d 948 (9th Cir. 1994) ...................................22

*HM Electronics, Inc. v. R.F. Technologies, Inc.*,
    2014 WL 12059031 (S.D. Cal. Apr. 18, 2014) ..............................15, 21, 23

*Honor Plastic Indus. Co. Ltd. v. Lollicup USA, Inc.*,
    466 F. Supp. 2d 1217 (E.D. Cal. 2006) ..........................................18, 20, 23

*Hous. Rts. Ctr. v. Sterling*, No. CV 03-859 DSF,
    2004 WL 3610228 (C.D. Cal. Dec. 29, 2004) ...........................................22

*Int'l Union v. Bagwell*,
    512 U.S. 821 (1994) .................................................................................23

*Irwin v. Mascott*,
    370 F.3d 924 (9th Cir. 2004).....................................................................8

*Jerry's Famous Deli, Inc. v. Papanicolaou*,
    383 F.3d 998 (9th Cir. 2004).............................................................15, 19

*Perry v. O'Donnell*,
    759 F.2d 702 (9th Cir. 1985) ...................................................................22

*Rolex Watch, U.S.A., Inc. v. Crowley*,
    74 F.3d 716 (6th Cir. 1996).......................................................................8

*Shillanti v. United States*,
    384 U.S. 364 (1966) ...................................................................................7

ii

*Spallone v. United States*,
    493 U.S. 265 (1990) ........................................................................7

*Stone v. City & County of San Francisco*,
    968 F.2d 850 (9th Cir. 1992)........................................................7

*Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*,
    281 F. Supp. 3d 967 (C.D. Cal. 2017)........................................21

*United States v. Ayres*,
    166 F.3d 991 (9th Cir. 1999)......................................................23

*United States v. United Mine Workers*,
    330 U.S. 258 (1947) ..................................................................23

*Wolfard Glassblowing Co. v. Vanbragt*,
    118 F.3d 1320 (9th Cir. 1997) ..................................................13


**Statutes**

15 U.S.C. § 1114 ..............................................................................2
15 U.S.C. § 1125(a) ..........................................................................2
15 U.S.C. §§ 1171, 1114(1)............................................................13
18 U.S.C. § 401 ................................................................................7
Cal. Bus. & Prof. Code §§ 17200, et seq.........................................2

## MEMORANDUM AND POINTS OF AUTHORITIES

## I.   INTRODUCTION

On March 31, 2022, this Court issued a definite and specific order enjoining Defendant Walmart, Inc. ("Walmart") from "advertising, marketing, importing, manufacturing, promoting, offering for sale, distributing, or selling the [set of pictured] sneakers, any other colorways of the same shoe designs, [or] colorable imitations of the [pictured] shoes."  *See* Order Granting Plaintiffs' Motion for Preliminary Injunction (Dkt. 65) (the "Order" or the "Injunction").  The Court included several pages showing images of shoes that Walmart has sold which were subject to this Injunction, along with "colorable imitations" of those shoes.  The Order further specifically enjoins Walmart from using the "Vans' Side Stripe Mark, Old Skool trade dress, SK8-Hi trade dress, Old Skool Toddler trade dress …, or any of Vans' registered trademarks, or any trade dress or trademark that is substantially similar thereto, on or in connection with Defendants' shoes or related services."  *Id.* at 30.

Walmart has failed to abide by this Injunction.  Not only has Walmart continued to sell, advertise, promote, manufacture, distribute, and offer some of the models of shoes that are specifically identified in the Court's Order, but Walmart is doubling down on its counterfeiting scheme by introducing a new model of shoe that closely mimics Vans' protected Side Stripe Mark and trade dress.  Given Walmart's actions, it is appropriate here for the Court to find that Walmart is in civil contempt and issue appropriate sanctions to ensure Walmart complies with the Injunction in the future.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

On November 15, 2021, Vans filed this lawsuit alleging that Walmart is promoting and selling knockoff shoes that create a likelihood of confusion with Vans' trademarks and trade dress.  Walmart's unauthorized use of Vans' trademarks and

trade dress rights caused actual consumer confusion and harmed Vans' goodwill and reputation, particularly since Walmart's fakes are cheaply made and inferior in quality compared to genuine Vans shoes. Vans brought claims against Walmart along with The Doll Maker, LLC and Trendy Trading, LLC for trademark infringement in violation of 15 U.S.C. § 1114, false designation of origin / unfair competition in violation of 15 U.S.C. § 1125(a), unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*., and common law trademark infringement and unfair competition.

Vans subsequently moved for a preliminary injunction because Walmart and the other Defendants continued to escalate their infringing activities and flood the market with cheap knockoff shoes.[1]  Walmart contested this motion, and following the parties' briefing and argument, this Court granted Vans' motion on March 31, 2022.  (Dkt. 65.)

The Injunction covered trademarks and trade dress rights used on Vans' most iconic shoe lines, including the OLD SKOOL shoes and SK8-Hi shoes.  Order (Dkt. 65) at 12-14.  These shoe lines feature intellectual property owned by Vans, including its Side Stripe Mark, Stitching Mark, Old Skool Trade Dress, Old Skool Toddler Trade Dress, and SK8-Hi Trade Dress.  *See* Order (Dkt. 65) at 2-4, 10-13 (describing the trademark and trade dress rights at issue and finding that Vans was likely to prove that it owns valid and enforceable rights in this intellectual property).  A chart summarizing the trademark and trade dress rights found by the Court is below:

---

[1]Defendants The Doll Maker, LLC and Trendy Trading, LLC entered into a Consented Interim Injunction, filed on January 4, 2022, wherein they agreed to refrain from selling, marketing, offering, or distributing shoes at issue in this case.  (Dkt. 25.)  Vans is not seeking relief against these Defendants at this time.

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE TO DEFENDANT WALMART, INC. RE: CIVIL CONTEMPT AND SANCTIONS

| Side Stripe Mark |  |
|---|---|
| Stitching Mark |  |
| Old Skool Trade Dress | The distinctive combination of (1) Vans Side Stripe Mark on the shoe upper; (2) a rubberized sidewall with a consistent height around the perimeter of the shoe; (3) the uppermost portion of the sidewall having a three-tiered or grooved appearance; (4) a texturized toe box outer around the front of the sidewall; (5) visible stitching, including where the eyestay meets the vamp; and (6) the placement and proportion of these elements in relation to one another. |
| Old Skool Toddler Trade Dress | The distinctive combination of (1) Vans Side Stripe Mark on the shoe upper; (2) a rubberized sidewall with a consistent height around the perimeter of the shoe; (3) the uppermost portion of the sidewall having a three-tiered or grooved appearance; (4) a texturized toe box outer around the front of the sidewall; (5) visible stitching; and (6) the placement and proportion of these elements in relation to one another. |

3

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE TO DEFENDANT WALMART, INC. RE: CIVIL CONTEMPT AND SANCTIONS

| SK8-Hi Trade Dress | The distinctive combination of: (1) the Vans Side Stripe Mark on the shoe upper; (2) a rubberized sidewall with a consistent height around the perimeter of the shoe; (3) the uppermost portion of the sidewall having a three-tiered or grooved appearance; (4) a textured toe box outer around the front of the sidewall; (5) a ribbed collar formation that encircles the uppermost part of the shoe; (6) visible stitching, including separating the individual ankle collar corrugations; and (7) the placement and proportion of these elements in relation to one another. |
|---|---|

In addition to determining that Vans would likely succeed in proving in this lawsuit that it owns valid and enforceable trademark and trade dress rights, the Court further determined that Vans will likely succeed in showing that Walmart infringed on these rights. *See* Order (Dkt. 65) at 14-23. The Court accordingly granted Vans' request for a preliminary injunction, issuing the following Order:

(1)    During the pendency of this litigation, Defendants, their agents, officers, employees, attorneys, and all persons who are in active concert or participation with Defendants, including but not limited to any e-commerce websites who receive actual notice of this order, are enjoined from advertising, marketing, importing, manufacturing, promoting, offering for sale, distributing, or selling the [sneakers pictured in the Order], any other colorways of the same shoe designs, colorable imitations of the [pictured] shoes, and/or facilitating, inducing, or assisting any of the foregoing conduct;

(2)    During the pendency of this litigation, Defendants, and their agents, officers, employees, attorneys, and all persons who are in active concert or participation with Defendants are enjoined from using Walmart's side stripe mark depicted on the [pictured] shoes, or any mark substantially

similar thereto, on or in connection with any of Walmart's shoes or related services.

(3)     During the pendency of this litigation, Defendants, and their agents, officers, employees, attorneys, and all persons who are in active concert or participation with Defendants, are enjoined from using Vans' Side Stripe Mark, Old Skool Trade Dress, SK8-Hi trade dress, Old Skool Toddler trade dress (each as defined in Vans' Complaint in this action), or any of Vans' registered trademarks, or any trade dress or trademark that is substantially similar thereto, on or in connection with Defendants' shoes or related services.

Order (Dkt. 65) at 27-30.

The Injunction went into effect immediately upon Vans' filing of the $50,000 bond ordered by this Court, which was posted on April 5, 2022.  *See* Decl. of Tanya L. Greene ("Greene Decl."), ¶ 3.

Subsequently, Vans identified several instances in which Walmart had failed to comply with the Order.  *See* Greene Decl., ¶¶ 4 & Exh. 1.  Most troubling, Vans became aware that Walmart had begun selling new styles of shoes that are substantially similar to many of the shoe styles Vans raised in the preliminary injunction.  Vans refers to these recently introduced styles as the **"Modified Side Stripe Shoes"** for clarity:



The Modified Side Stripe Shoes are slightly modified versions of the Vans knock-offs it introduced in 2019 (and which are specifically called out through images in

the Injunction).  *See* Order (Dkt. 65) at 27-29 (images of Walmart shoes).  The Modified Side Stripe Shoes feature two changes from the earlier styles: (i) the color of stitching matches the shoe, and (ii) the shape of the side stripe is altered to be even more similar to the Vans Side Stripe Mark.  *See* Greene Decl., ¶ 5.  Vans did not learn that Walmart was selling Modified Side Stripe Shoes until after the Court held its hearing on Vans' preliminary injunction motion and the Order issued.  *Id.* ¶ 6.

Vans sent a letter to Walmart on May 2, 2022, setting out several advertisements appearing on Walmart's website that showed enjoined shoes, and also raising that Walmart's sale of the Modified Side Stripe Shoes violates the Order.  *See* Exh. 1 to Greene Decl.  Vans requested that Walmart remedy these deficiencies and also provide a full explanation of the steps it undertook to comply with the Order.  *Id.*

Walmart responded to Vans by email dated May 13, 2022.  Walmart advised that it took the following steps to comply with the Injunction:  (1) issuing a "pull and hold" instruction to retail stores, instructing them "to remove all enjoined shoes from shelves"; (2) implementing a "sales restriction" at retail stores so that if an enjoined shoe is "presented to a point-of-sale terminal, sale would not be permitted"; and (3) unpublishing "all listings for the enjoined shoes" from online sales which would "remove[] the items from display and sale."  *See* Exh. 2 to Greene Decl.  As for the Modified Side Stripe Shoes, Walmart took the position that these shoes are not subject to the Injunction because they were not specifically pictured in the Injunction and are not "a colorable imitation of the enjoined shoes or otherwise subject to the order."  Walmart further stated that this shoe line is being discontinued. *See* Exh. 2 to Greene Decl.

Vans subsequently learned that Walmart has committed other violations of the Order.  Specifically, Vans became aware of two retail stores (located in Levelland, Texas and in Simi Valley, California) that continued to display shoes pictured in the Injunction and thus clearly covered by the Order.  *See* Greene Decl., ¶¶ 9-11.  Further,

Vans became aware that another shoe style specifically pictured in and covered by the Injunction remains for sale on Walmart's website. *See* Greene Decl., ¶¶ 12-13. Vans continued engaging Walmart to resolve these issues, but although Walmart has stated that it will take steps to cease their ongoing infringement, Walmart has yet to actually follow through. *See* Greene Decl., ¶¶ 14-16. Rather, Vans has continued to learn of new instances of infringement. *See* Greene Decl., ¶ 17.

In light of Walmart's ongoing failure to comply with the Injunction, Vans has brought this motion, seeking that Walmart be held in civil contempt and that the Court impose sanctions to both coerce compliance and compensate Vans for the fees and costs incurred in bringing this motion.

## III.   <u>LEGAL STANDARD</u>

"Courts have inherent power to enforce their orders through civil contempt." *See Spallone v. United States*, 493 U.S. 265, 276 (1990) (citing *Shillanti v. United States*, 384 U.S. 364, 370 (1966)); 18 U.S.C. § 401 (granting courts the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority" including for failing to abide by a lawful order or command). In the Ninth Circuit, a finding of civil contempt is proper when a party disobeys a specific and definite court order by failure to take all reasonable steps within the party's power to comply. *See Go-Video, Inc. v. Motion Picture Ass'n of America*, 10 F.3d 693, 695 (9th Cir. 1993) (imposing this standard). In this inquiry, the district court has wide discretion to find contempt and impose sanctions. *Stone v. City & County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992). While civil contempt proceedings focus on the defendant's actions, the defendant's intent is "irrelevant" if it has failed to take all reasonable steps to comply with the court's order. *See id.* ("Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense." (and collecting cases)).

In a motion for an order to show cause regarding contempt, "the moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.  The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004) (citation and quotation marks omitted).  A summary claim of inability to comply is insufficient; rather, the alleged contemnor must submit evidence to support his claim, and must demonstrate he made, in good faith, all reasonable efforts to comply.  *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991); *see also Rolex Watch, U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) ("[A] defendant must show categorically and in detail why he or she is unable to comply with the court's order[.]") (internal quotations and citation omitted)).  An enjoined party may not challenge the merits of the underlying injunction in a contempt proceeding. *Irwin v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2004) (internal quotations and citation omitted).

## IV.   <u>ARGUMENT</u>

### A.   **Walmart is Violating the Injunction Order and Continues its Unauthorized Use of Vans' Trademarks and Trade Dress in a Manner Likely to Cause Consumer Confusion.**

Walmart is violating the Injunction.  The Court clearly and specifically enjoined Walmart from using Vans' trademarks and trade dress, along with any confusingly similar marks.  The Order requires that Walmart must, during this litigation, refrain from:

> 1)   "advertising, marketing, importing, manufacturing, promoting, offering for sale, distributing, or selling the [set of pictured] sneakers, any other colorways of the same shoe designs, [or] colorable imitations of the [pictured] shoes";

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE TO DEFENDANT WALMART, INC. RE: CIVIL CONTEMPT AND SANCTIONS

2)    "using Walmart's side stripe mark depicted on the [pictured] shoes, or any mark substantially similar thereto, on or in connection with any of Walmart's shoes or related services"; and

3)    "using Vans' Side Stripe Mark, Old Skool trade dress, SK8-Hi trade dress, Old Skool Toddler trade dress (each as defined in Vans' Complaint in this action), or any of Vans' registered trademarks, or any trade dress or trademark that is substantially similar thereto, on or in connection with Defendants' shoes or related services."

*See* Order (Dkt. 65) at 27-30.  That is, under the first term, Walmart may not advertise, market, import, promote, offer, distribute, or sell either the shoes pictured in the Order or any "colorable imitations" of those shoes.  *Id.*  And under the third term, Walmart may not use Vans' trademarks or trade dress, including anything "substantially similar thereto" on its shoes or related services.  *Id.*  This language is clear and unequivocal.  Yet Walmart has failed to follow the Court's Injunction in multiple respects, thereby continuing to harm Vans.

           **1.**     **Walmart is Violating the Order by Selling its "No Boundaries" Shoes Online.**

      First, Walmart's website is currently selling, advertising, offering, and distributing one of the shoes that is specifically depicted in the Injunction.  This shoe—called the "No Boundaries" Men's low top sneaker appears on Walmart's website at the URLs https://www.walmart.com/ip/No-Boundaries-Men-s-Low-Retro-Sneakers/539403103 and https://www.walmart.com/ip/No-Boundaries-Men-s-Mid-Retro-Lace-up-Casual-Sneakers/375500736.  *See* Greene Decl., ¶¶ 12, 16, 17 & Exhs. 6-7.  A comparison of the Court's Order and Walmart's website leaves no doubt that this shoe is identical to the "No Boundaries Men's Low-Top Shoe" that the Order clearly enjoins:

9

| Shoes Covered by the Court's Injunction | Shoes Being Sold by Walmart through its website |
|---|---|
|   No Boundaries Men's Low-Top Shoe  *See Order (Dkt. 65) at 30 (including the image of this shoe to make clear that this shoe is within the scope of the Injunction).* |   *See Greene Decl., ¶ 12; see also Exh. 4 to Greene Decl. (investigator report confirming he successfully purchased this shoe from Walmart's website on June 16, 2022); Greene Decl., ¶ 17 & Exh. 6 (showing this shoe for sale as of July 21, 2022).* |
|   No Boundaries Men's High-Top Shoe  *See Order (Dkt. 65) at 29 (including image of this shoe).* |   *See Greene Decl. ¶ 17 & Exh. 7 (showing this shoe listed for sale on Walmart's website as of July 21, 2022).* |

10

Walmart is actively advertising, promoting, offering, distributing, and selling these "No Boundaries" shoes through its website. In fact, Vans' investigator viewed one of the shoes at the above-listed URL on June 16, 2022, and submitted an order to purchase a pair of these shoes through the website that same day. *See* Exh. 4 to Greene Decl. at 3. Walmart filled the order and shipped the shoe, which was delivered on June 17, 2022. *Id*. The shoe actually received by the investigator also matches the image of the shoe set out in the Order and shown on Walmart's website:



*See id.* at 10 (images of shoes that investigator received from Walmart). And as of July 21, 2022, this shoe remains available for sale on Walmart's website. *See* Greene Decl., ¶ 16 & Exh. 6. More alarmingly, Vans learned on July 21, 2022, that the second style shown above (in white) is also now posted for sale on Walmart's website. *See* Greene Decl., ¶ 17 & Exh. 7.

By advertising, offering, selling, and distributing these shoes, Walmart is violating the Order's first term, which specifically prohibits these actions in connection with the shoes pictured by the Court and all colorable imitations thereof. *See* Order (Dkt. 65) at 27, 30. Without question, Walmart should be held in contempt for its failure to comply with the Injunction.

### 2.      *Walmart is Violating the Order by Selling Modified Side Stripe Shoe Styles both Online and in Retail Stores.*

Walmart's violations of the Order go beyond simply failing to comply with the Order.  Walmart has also actively attempted to subvert the Order by doubling down on its Vans knock-offs and is now advertising, offering, promoting, distributing, and selling the Modified Side Stripe Shoes.  The Modified Side Stripe Shoes are even more similar to Vans' designs.

Walmart is selling these shoes both online and in retail stores.  Examples of these styles of shoes were identified by Vans' investigator at the Levelland, Texas Walmart retail store.  *See* Exh. 3 to Greene Decl. (investigator report).  The investigator observed and was able to purchase the following three pairs of these



shoes from this store on June 11, 2022:

*See* Exh. 3 to Greene Decl. at 4.  Vans also encountered Modified Side Stripe Shoes available for sale at the Simi Valley, California Walmart store.  *See* Greene Decl., ¶ 11.  And these shoes have been actively sold on Walmart's website.  *See id.* ¶ 5.

While Walmart has now indicated that it will pull these shoes from stores and its website, Walmart has not provided any confirmation that these steps have actually been taken—or that its "pull and hold" efforts have been successful.  *See* Greene Decl., ¶¶ 14-15.  In Vans' view, Walmart must actually show that its "pull and hold" orders are followed in its retail stores.  This is crucial given that Vans has seen that the "pull and hold" efforts Walmart has taken with respect to other infringing shoes have *not* been followed at its retail locations.  *Infra* § IV.A.3.  Walmart must take

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE TO DEFENDANT WALMART, INC. RE: CIVIL CONTEMPT AND SANCTIONS

reasonable steps to ensure compliance, and this includes steps that will actually yield results.

Walmart has taken the position that the Modified Side Stripe Shoes are not subject to the Injunction Order. *See* Exh. 2 to Greene Decl. at 2 (correspondence from Walmart regarding compliance efforts).   But that position is unsupported. Multiple terms of the Injunction encompass these shoes.  The Order is not limited in scope to only the specific shoe styles and SKUs that are pictured therein.  The scope of the Order is broader, prohibiting Walmart from (i) advertising, offering, promoting, distributing, and selling "colorable imitations" of the shoes that are pictured, and (ii) "using" any trademark or trade dress that is "substantially similar" to Vans' trademarks and traded dress.  *See* Order (Dkt. 65) at 27-30.  Here, the Modified Side Stripe Shoes are colorable imitations of the shoes that the Court specifically identified in the Order, and also use trademarks and a trade dress that is substantially similar to Vans' protected rights.

A "colorable imitation" of a trademark means a mark that is confusingly similar. 15 U.S.C. §§ 1171, 1114(1).  The first term of the Order, then, encompasses shoes that are confusingly similar to those pictured in the Order and not just the specific SKUs or other colorways of the pictured shoes. *See Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1323-24 (9th Cir. 1997) (interpreting a similar provision enjoining "colorable imitations" as encompassing conduct beyond just "exact copies" of the infringing mark, and noting that "[t]he injunction's prohibition of 'colorable imitations' would be of no effect" if a different interpretation was given).  And here, the Modified Side Stripe Shoes incorporate nearly every element of the side stripe shoes that are pictured in the Order.  In fact the primary distinction between these shoes and the shoes shown in the Order is that on the Modified Side Stripe Shoes, the side stripe is even more similar to the Vans Side Stripe Mark.  These overwhelming similarities mean these Modified Side Stripe Shoes are "colorable

13

imitations." *See id.* at 1323 (new lamp designed and sold by defendant was a "colorable imitation" of enjoined lamp where new lamp was nearly the same, with only a change in design shape). The Order consequently prohibits Walmart from advertising, promoting, offering, distributing, and selling these shoes. *See* Order (Dkt. 65) at 27.

Further, the Modified Side Stripe Shoes are substantially similar to Vans' protected Side Stripe Mark and protected trade dress, meaning that Walmart is violating the third term of the Order by selling these shoes. *See* Order (Dkt. 65) at 30. These Modified Shoes contain nearly all the elements of the Old Skool trade dress and Old Skool Toddler trade dress that the Court protected in the Order. The sole differences—the color of the stitching and the shape of the side stripe—do little to distinguish the Modified Side Stripe Shoes from the other enjoined shoes that the Court has already found likely violate Vans' trademark rights.

An examination of the side stripe detail on the Modified Shoes highlights the issue. In granting Vans' preliminary injunction motion, the Court found that the shoes Walmart began selling in 2019 likely infringe on Vans' Side Stripe Mark and will lead to consumer confusion. *See* Order (Dkt. 65) at 23 (summarizing analysis and conclusion of likelihood of confusion factors). This same conclusion must be reached with respect to the Modified Side Stripe Shoes, which feature a side stripe that resembles the Vans' Mark even more closely, as shown here:

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE TO DEFENDANT WALMART, INC. RE: CIVIL CONTEMPT AND SANCTIONS

| Vans' Side Stripe | Walmart's prior side stripe shoes (pictured in the Injunction Order) | Modified Side Stripe Shoes |
|---|---|---|
|  | \n\nWonder Nation Toddler Shoe |  |

The tweaks that Walmart made in designing the Modified Side Stripe Shoes **increase** the association between these shoes and Vans, and the length, angles, and positioning of the side stripe on the Modified Shoe is even more similar to Vans' Mark. There is no credible basis for Walmart to assert that the Modified Side Stripe Shoes do not use a stripe that is substantially similar to Vans' protected Side Stripe Mark. *See, e.g., HM Electronics, Inc. v. R.F. Technologies, Inc.*, 2014 WL 12059031, at *4 (S.D. Cal. Apr. 18, 2014) (finding that defendant in civil contempt for using "substantially similar" marks where defendant used similar marks on his website after injunction issued). Accordingly, Walmart is violating the third provision of the Injunction Order because it is using a trademark and trade dress that are substantially similar to Vans'. *See* Order (Dkt. 65) at 30.

Because the Order's scope encompasses the Modified Side Stripe Mark, Walmart's advertising, offering, distribution, and sale of these shoes online and in retail stores violates the Court's Order. *See Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1002-04 (9th Cir. 2004) (affirming order of contempt where defendant continued to use trademarks in violation of preliminary injunction). Walmart should be held in civil contempt.

### 3. Walmart Retail Stores Continue to Offer and Advertise Shoes Specifically Covered by the Injunction.

Third, Walmart is violating the Order because Walmart is advertising, offering, distributing, and selling shoes covered by the Injunction in retail stores across the country.  For example, retail stores in Levelland, Texas and Simi Valley, California both have enjoined shoes displayed in their merchandise:

| Shoes Covered by the Court's Injunction | Shoe Being Displayed in Walmart Retail Stores |
|---|---|
| <br><br>Wonder Nation Boys' Low-Top Shoe<br><br>*See Order (Dkt. 65) at 27.* | <br><br><br><br>*See Greene Decl., ¶ 11 (images of shoes displayed at Simi Valley location).* |

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*See Greene Decl., ¶ 11 (images of shoes displayed at Simi Valley location).*





**Wonder Nation Toddler Shoe**

*See Order (Dkt. 65) at 28.*

*See Ex. 3 to Greene Decl. (images of shoes displayed at Levelland, Texas location).*

17

No Boundaries Men's High-Top Shoe

*See Order (Dkt. 65) at 28.*



*See Greene Decl., ¶ 11 (images of shoes displayed at Simi Valley location).*

Walmart is violating the Order enjoining it from offering and advertising these shoes.  There can be no dispute here that the shoes pictured above are covered by the Order, meaning that Walmart is prohibited from advertising, offering, distributing, promoting, and selling these shoes.  *See* Exh. 2 to Greene Decl. at 2 (correspondence from Walmart acknowledging that the shoes specifically pictured in the preliminary injunction order are enjoined).  While Walmart represents that it has implemented procedures throughout its retail stores that prevent the enjoined shoes from actually being purchased, this mechanism does not satisfy the requirements here.  Even if a consumer cannot actually complete a purchase of one of these shoes, consumers still see these shoes displayed in Walmart's stores and will believe that these shoes are for sale and can be purchased, meaning that the shoes are still being advertised, promoted, and offered by Walmart.  *See Honor Plastic Indus. Co. Ltd. v. Lollicup USA, Inc.*, 466 F. Supp. 2d 1217, 1222-23 (E.D. Cal. 2006) (finding defendant in civil contempt of order enjoining the advertisement of goods bearing plaintiff's mark where defendant's website continued to show those goods even though no goods were

actually sold or delivered).  Having these enjoined shoes on display in the same aisles that Walmart displays and sells the Modified Side Stripe Shoes exacerbates the problem, increasing the likelihood that consumers will believe these shoes and the Modified Side Stripe Shoes are genuine Vans' products.  *See* Greene Decl., ¶ 11 & Exh. 3 (showing pictures of shoes being sold in the same displays); *Jerry's Famous Deli*, 383 F.3d at 1003-04 (affirming finding of civil contempt where defendant used a layout that was substantially similar to layout covered by preliminary injunction, and that the similarities between the trade dress would likely result in customer confusion despite a number of minor differences).  Finally, there is no guarantee that sales restrictions will be effective.  If a consumer encounters one of these enjoined shoes in a Walmart location and attempts to purchase it, a sales associate or manager may override any precautions.

Because these enjoined shoes are still being displayed for sale in Walmart retail locations, Walmart is not in compliance with this Court's Order.

## B.     Walmart has Failed to Take Reasonable Steps to Comply with the Injunction.

In light of these blatant violations of the Injunction, Walmart cannot meet its burden to show that it has taken reasonable measures to meet its duties.  This is true with respect to both Walmart's online sales and its brick and mortar locations.

Walmart has represented that it undertook several steps in order to comply with the obligations set forth in the Order: (i) unpublishing the listings for enjoined shoes sold online; and (ii) issuing a "pull and hold" notice to retail stores concerning the enjoined shoes and instituting a sales restriction so that enjoined shoes cannot be purchased in stores.  *See* Exh. 2 to Greene Decl. at 2 (correspondence from Walmart detailing compliance efforts to date).  Accepting these representations as true, Walmart's efforts fall short—with respect to both (i) the shoes that Walmart concedes are enjoined, and (ii) the shoes that it (unreasonably) asserts are not enjoined.

19

First, Walmart has not taken reasonable steps to comply with the Order even with the shoes that are indisputably covered by the Order.  Walmart continues to sell enjoined shoes online (including shoes that are specifically pictured in the Injunction and indisputably covered), and Walmart retail stores continue to display enjoined shoes (including shoes pictured in the Order) on shelves.  *See* Greene Decl., ¶¶ 10-13, 16-17 & Exhs. 3-4, 6-7.  The measures that Walmart undertook have not been effective, as described above.  *See supra* § IV.A.1-3.   Confirming Walmart's indifference to its obligations, Walmart has not implemented steps to confirm whether or not its efforts have been successful.  For instance, while Walmart unpublished most of the enjoined shoes from its website, at least two of these shoes are still being actively sold online.  Exhs. 4, 6, 7 to Greene Decl. (showing sneakers currently available online for sale).  For its retail stores, Walmart may have executed a "pull and hold" notice, but it has not implemented any tracking or follow-up procedures to ensure that individual stores carried out this directive—and it is clear that some stores have not followed through.  *See* Greene Decl., ¶¶ 10-11 & Exhs. 2-3 to Greene Decl.  Walmart must take reasonable actions to **fully** comply with the Injunction.  Half measures are not enough.  *See, e.g.*, *Lollicup*, 466 F. Supp. 2d at 1224 (imposing civil contempt sanctions where defendant made some efforts to comply with preliminary injunction but failed to fully comply, including by continuing advertisements bearing the enjoined mark).

With Walmart failing to take reasonable steps to ensure that its remedial measures have been successful, Walmart has effectively offloaded the burden onto Vans to scour Walmart's operations to flag noncompliance.  Vans is not well positioned to monitor Walmart retail stores for compliance and this responsibility should not fall on Vans in any event. *FTC v. Affordable Media*, 179 F.3d 1228, 1241 (9th Cir. 1999) ("[T]he party asserting the impossibility defense must show 'categorically and in detail' why he is unable to comply" with injunction to avoid

20

contempt).  Walmart is responsible for complying with the Order **in full**, and Walmart has not made reasonable efforts to do so here.  *See HM Electronics*, 2014 WL 12059031, at *5 (finding that defendant had not taken reasonable steps to comply with injunction even where defendant corrected some issues that had been caused by "inadvertent error" based on court's determination that defendant had continued to commit other violations of injunction).

Second, Walmart is not taking reasonable steps to comply with the Order because it has been outright flouting the Injunction with respect to the Modified Side Stripe Shoes.  Walmart at first refused to take any action to stop selling these shoes.  *See* Exh. 2 to Greene Decl. (correspondence from Walmart); Greene Decl., ¶¶ 5, 11 & Exh. 3 (Modified Side Stripe Shoes being sold online and in stores).  While Walmart has now softened its tune and made representations that it will cease its infringement with respect to these shoes as well, Walmart has not shown that it is actually putting its words into action.  *See* Greene Decl., ¶¶ 14-15.  As explained above, *supra* § IV.A.2, these shoes are covered by multiple provisions of the Order, and Walmart is prohibited from advertising, offering, selling, promoting, manufacturing, or distributing these shoes while the Injunction is in effect.  *See* Order (Dkt. 65) at 27-31.  Walmart must be held to the same standard with respect to the Modified Side Stripe Shoes that applies with respect to the other shoes specifically pictured in the Order.  *Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*, 281 F. Supp. 3d 967, 987 (C.D. Cal. 2017) ("Quite frankly, Defendants do not really deny that they could have complied with the injunction, but rather, only provide insight as to why they chose not to comply with the injunction.").

## C.    Sanctions are Warranted

Vans has shown clear and convincing evidence that Walmart has violated this Court's order.  Because Walmart's conduct has made clear that it will continue to violate the Order unless and until this Court takes further steps to enforce its

21

Injunction, Vans respectfully requests that the Court order coercive sanctions to prevent further violations and order Walmart to pay Vans' attorneys' fees and costs incurred in bringing this motion.

### 1. *Walmart Should be Ordered to Pay Vans' Attorneys' Fees and Costs Incurred in Connection with this Motion.*

It is well within a district court's discretion, after finding a party in contempt of an order enjoining a defendant from infringing a trademark, to award attorneys' fees to a party who successfully establishes civil contempt. Moreover, "civil contempt need not be willful to justify a discretionary award of fees and expenses as a remedial measure." *Perry v. O'Donnell*, 759 F.2d 702, 704 (9th Cir. 1985). A contrary rule would prevent a party proving contempt from being fully compensated in many cases. *Id*. at 705.

Here, an award of attorneys' fees and costs to Vans is appropriate and warranted as compensation for compelling Walmart to do what it should have done in the first place—fully comply with the Court's Order. If Walmart had respected the Court's Order and complied with the Injunction, Vans would have no reason to bring this motion to compel obedience. *See Harcourt Brace Jovanovich Legal & Prof'l Publ'ns v. Multistate Legal Studies*, 26 F.3d 948, 953 (9th Cir. 1994) (granting district court discretion to award attorneys' fees for civil contempt orders). The Court should find that Vans is entitled to an award of attorneys' fees here so that Walmart (not Vans) faces the financial burdens of bringing Walmart into compliance. *See Hous. Rts. Ctr. v. Sterling*, No. CV 03-859 DSF, 2004 WL 3610228, at *3 (C.D. Cal. Dec. 29, 2004) (ordering contemnor to reimburse other party for attorneys' fees incurred in bringing contemnor into compliance). This award should also require Walmart to reimburse Vans for its related costs, including the costs to hire investigators to research and document Walmart's noncompliance with the Order.

22

Here again, if Walmart had properly complied with its obligations, then Vans would not have been forced to incur these costs.

### 2. The Court Should Impose a Schedule of Fines to Compel Walmart's Compliance.

The Court should also establish a schedule of fines on a going-forward basis should Walmart continue to fail to comply with the Order. Courts often impose fines where a party is in civil contempt, as a monetary fine can coerce compliance. *See Int'l Union v. Bagwell*, 512 U.S. 821, 829 (1994). "If the fine, or any portion of the fine, is coercive, it should be payable to the court. In determining how large a coercive sanction should be the court should consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (citations omitted). Courts also should take into account "the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947).

Vans submits that a fine of $3,000 per day is both reasonable and appropriate if Walmart continues to fail to comply with the Order. *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) ("One of the paradigmatic civil contempt sanctions is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order.") (internal citations and quotations omitted). A fine of this amount would be effective in encouraging Walmart to satisfy its obligation to undertake all reasonable efforts to comply with the Injunction. *See, e.g., Lollicup*, 466 F. Supp. 2d at 1225 (fine of $3,000 per day); *HM Electronics*, 2014 WL 12059031, at *6 (daily fine of $2,500 until defendant came into compliance with order).

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE TO DEFENDANT WALMART, INC. RE: CIVIL CONTEMPT AND SANCTIONS

## V.   <u>CONCLUSION</u>

Vans has shown clear and convincing evidence that Walmart has violated this Court's order.  Walmart's conduct has made clear that it will continue to violate the preliminary injunction unless and until this Court takes further steps to enforce its order.  Vans requests this Court issue an Order to Show Cause re: Civil Contempt and Sanctions and find Walmart in civil contempt based on the violations outlined in this motion.  Vans further requests this Court issue coercive sanctions to prevent further violations and order Walmart to pay Vans' attorneys' fees and costs incurred in bringing this motion.

DATED: July 22, 2022          MCGUIREWOODS LLP


By :   */s/ Tanya L. Greene*
      _____
      Tanya L. Greene
      Lucy Jewett Wheatley
      Nicholas J. Hoffman
      Claire Hagan Eller

      Attorneys for Plaintiffs Vans, Inc.
      and VF Outdoor, LLC

PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE TO DEFENDANT WALMART, INC. RE: CIVIL CONTEMPT AND SANCTIONS

## **CERTIFICATE OF SERVICE**

I hereby certify that on **July 22, 2022**, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **July 22, 2022**, at Los Angeles, California.

*/s/ Tanya L. Greene*
Tanya L. Greene
McGuireWoods LLP