# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| VANS INC. et al., | Case No. 8:21-CV-01876-DOC (ADS) |
| Plaintiffs, | |
| | |
| vs. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ACI INTERNATIONAL'S MOTION FOR SUMMARY ADJUDICATION [209] |
| ACI INTERNATIONAL et al., | |
| Defendants. | |

Before the Court is Defendant ACI International and Walmart, Inc.'s (collectively "ACI" or "Defendant") Motion for Summary Adjudication ("Mot." or "Motion") (Dkt. 209).[1] The Plaintiffs in this case are Vans, Inc. and VF Outdoor, LLC (collectively "Vans" or "Plaintiff"). The Court heard oral argument on this matter on September 21, 2023. For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

## I.    BACKGROUND

ACI manufactures and distributes footwear. Since the 1980s, ACI has supplied footwear to Walmart. Plaintiff filed this lawsuit in 2021 alleging that some of the shoes that ACI supplied to Walmart infringe on Plaintiff's intellectual property. In this Motion, Defendant primarily attacks the validity of Vans' asserted SK8-HI and OLD SKOOL trade dresses. The following recitation of facts thus focuses on Vans' asserted trade dresses. The Court provided a more comprehensive recitation of this case's facts in its order granting Vans' Motion for a Preliminary Injunction ("PI Order") (Dkt. 65).

### A.  Facts[2]

#### 1.  Vans' Asserted Trade Dresses

ACI International is a company that supplies shoes to Walmart. Defendant's Statement of Undisputed Facts ("DSUF") (Dkt. 209-TK) # 1. In November 2022, Vans—a shoe manufacturer that primarily sells skate shoes—alleged that roughly twenty pairs of shoes supplied by ACI and sold by Walmart infringe on four of Vans' trade dresses. *Id.* # 3. Vans' "OLD SKOOL Trade Dress" and "OLD SKOOL Toddler Trade Dress" (collectively "OLD SKOOL") consist of the following elements: (1) the Vans Side Stripe Mark on the shoe upper; (2) a rubberized sidewall with a consistent height around the perimeter of the shoe; (3) the uppermost portion of the sidewall having a three-tiered or grooved appearance; (4) a textured

---

[1] Defendant Walmart, Inc. has joined this motion for summary adjudication. Because ACI and Walmart submitted separate summary adjudication motions at the same time, the Court calls this the "ACI Motion" and refers to the ACI as the Defendant for the sake of clarity. Nonetheless, the rulings herein apply in equal force to both ACI and Walmart.

[2] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

toe box outer around the front of the sidewall; (5) visible stitching, including where the eyestay meets the vamp; and (6) the placement and proportion of these elements in relation to one another. *Id.* # 6-7.

The second set of trade dresses Vans asserted in its complaint is the "SK8-HI Trade Dress" and "SK8-MID Toddler Dress" (collectively "SK8-HI"). *Id.* Vans defines those trade dresses as the "distinctive combination of source identifying elements, including: (1) the Vans Side Stripe Mark on the shoe upper; (2) a rubberized sidewall with a consistent height around the perimeter of the shoe; (3) the uppermost portion of the sidewall having a three-tiered or grooved appearance; (4) a textured toe box outer around the front of the sidewall; (5) a ribbed collar formation that encircles the uppermost part of the shoe; (6) visible stitching, including separating the individual ankle collar corrugations; and (7) the placement and proportion of these elements in relation to one another." The SK8-HI and OLD SKOOL trade dresses are featured on the shoes depicted below.



Each component of the SK8-HI and OLD SKOOL dresses contribute to the functional features that wearers want in a shoe. The canvas side quarter of Vans' shoes weighs between 8 and 10 ounces and is partly supported by reinforcements toward the front of the side quarter. *Id.* # 26; Plaintiff's Statement of Disputed Facts ("PSDF") (Dkt. 237) # 26. Vans' side stripe runs across the side quarter and is made of a thicker, leather material. DSUF # 28. This thicker

leather material helps support the side quarter of the shoe, *id.* # 29, though the parties dispute whether the side stripe is necessary to keep the side quarter standing upright. *Compare id.* # 30 *with* PSDF # 30.

Vans constructs its shoes through vulcanization, which is a process that uses heat to bond the outsole to the upper. The upper and outer soles are created separately, and then a piece of foxing tape—a rectangular piece of rubber—is stretched around the upper. DSUF # 35. Vans then runs another rubber band (the black strip on the midsole of the shoes depicted above) over the first layer of foxing tape. *Id.* Finally, Vans stretches another piece of foxing tape around the sole and adheres it on top of the first piece of foxing tape. *Id.* The shoe is then heated to complete the chemical bond. Vans' layering of these three pieces of foxing tape creates its "three-tiered grooved" midsole. In addition to adding to the aesthetics of the shoe, this method has two functional advantages. First, stretching and wrapping several pieces of rubber foxing tape around the sole and upper makes it very difficult for the tape to move during the production process. Keeping the tape in place helps ensure that the sidewall is a consistent height around the shoe and that there is consistency across different pairs of Vans' shoes. Second, using three pieces of foxing tape increases the surface area for bonding, resulting in a flexible yet sturdy shoe. DSUF # 37.

The ends of the foxing tape overlap at either the front or back of the shoe. Vans covers this overlap with a "toe bumper," if the tape terminates at the front of the shoe, and a "heel scab" or "license plate," if the tape meets in the back. *Id.* at 12. These toe bumpers and license plates add additional abrasion protection in areas where the shoe is especially likely to be scuffed. *Id.* Moreover, Vans' toe bumpers, over which Vans asserts trade dress protection, are textured, which helps provide additional and better grip for skateboarders doing tricks. *Id.* # 42.

Vans also seeks protection for its shoes' "visible stitching." These stitches serve the normal stitching function of holding the pieces of Vans' shoes together. *Id.* # 45. For instance, the double line of stitching at the top of the vamp holds the vamp, the eye stay, the tongue, and the inside front of the upper of the shoe together. *Id.* # 46. For the SK8-HI trade dress, the

stitching on the ankle collar helps keep the fabric together while also increasing the shoe's flexibility at the ankle. *Id.* # 47, 52.

### 2. Vans' attempt to register its trade dress

On March 30, 2020, Vans filed a federal trademark application with the United States Patent and Trademark Office ("USPTO"), Serial No. 88/852,578 (the "578 Application"). *Id.* # 62. The 578 Application was for a "a three-dimensional configuration of a shoe featuring" eleven different elements. *Id.* # 63. The USPTO required that Vans disclaim any "exclusive right to use the depiction of the stripe on the foxing [i.e., the black foxing stripe] of the shoe apart from the mark as shown." *Id.* # 66. The USPTO required this disclaimer because it uncovered at least ten different shoes that feature a similar stripe along the foxing of the shoe. *Id.* # 67. Thus, according to the USPTO, "consumers are unlikely to see the stripe as a source-identifying element." *Id.* # 69. Vans expressly disclaimed the exclusive right to use the foxing stripe independent of the other elements of its asserted trade dress. *Id.* # 72. According to the USPTO's website, the 578 Application is currently pending.[3]

### B. Procedural History

Vans filed this lawsuit on November 15, 2021, against Walmart, ACI, and another shoe manufacturer called Trendy Trading and the Doll Maker (TTDM).[4] One and a half months later, Vans moved to preliminarily enjoin the defendants from selling infringing shoes. *See generally* Motion for Preliminary Injunction (Dkt. 21-1). The Court granted the motion and entered a preliminary injunction on March 31, 2022. *See* PI Order. Among other prohibitions, the injunction prohibited ACI from using Vans' OLD SKOOL and SK8-HI trade dresses. *Id.* at 30.

On August 10, 2023, Defendant filed the present Motion, which Walmart joined. Vans filed an Opposition to Motion for Summary Adjudication ("Opp'n") (Dkt. 236) on August 21,

---

[3] United States Patent and Trademark Office, https://tsdr.uspto.gov/#caseNumber=88/852,578+&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited Sep. 19, 2023).

[4] TTDM sold shoes on Walmart's marketplace that bore significant similarities to Vans' shoes. TTDM has since settled out of this lawsuit. *See* Consent Judgment and Permanent Injunction (Dkt. 289).

2023. ACI replied on August 29, 2023. Reply in Support of Motion for Summary Adjudication ("Reply") (Dkt. 264).

## II.    LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law…" *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there

must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III.   DISCUSSION

Defendant seeks summary adjudication on five issues:

1) That Vans' SK8-HI and OLD SKOOL trade dresses are functional;

2) That Vans' SK8-HI and OLD SKOOL trade dresses are vague;

3) That Vans is estopped from asserting SK8-HI and OLD SKOOL as protected trade dresses;

4) That Vans cannot prove its unfair competition claims, and

5) That Vans cannot establish a violation of 15 U.S.C. § 1114 for ACI's alleged infringement of Vans' unregistered trademarks and trade dresses.

*See generally* Mot.

The Court denies the Motion as to the first four points but grants summary adjudication on the fifth point. The Court discusses each issue in turn.

### A. Whether the OLD SKOOL and SK8-HI trade dresses are functional

ACI argues that Vans' asserted trade dresses are not protectable because they are functional. Mot. at 10. ACI proceeds to go through seven elements of Vans' trade dresses and explains how each one of those elements serves a utilitarian function. *See, e.g.*, Mot. at 12 (arguing that Vans' side stripe provides structural integrity for the shoe); *id.* at 15-16 (arguing that the ribbed collar on Vans' SK8-HI trade dress increases the shoes' flexibility). ACI concludes that, because Vans' trade dress is an assemblage of functional parts arranged in a configuration that is optimal for the shoe's purpose, the trade dress itself is functional. Mot. at 17. Vans disputes that these seven elements are solely functional but also emphasizes that its trade dress's functionality must be judged in its entirety. Opp'n at 10-22. Vans maintains that, while each aspect of its shoe serves some utilitarian function, the way that Vans has configured those elements is not driven by functional necessity. *Id.*

A trade dress is not protectable if it is "functional*." Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018). "Functional features of a product are features that constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *Vuitton Et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 774 (9th Cir. 1981). The purpose of the non-functionality requirement is to "make[] it very difficult for sellers to use trademark rights to monopolize design of their products." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 864 (9th Cir. 2020); *see also Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995) ("It is the province of patent law, not trademark law, to encourage invention by granting investors a monopoly over new product designs or functions for a limited time."); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (noting that the non-functionality requirement's rationale is to avoid putting competitors at a non-reputation-related competitive disadvantage). In analyzing whether a trade dress is functional, the Ninth Circuit has created a two-step test. First, courts ask whether the asserted trade dress has "utilitarian functionality." *Blumenthal*, 963 F.3d 859, 864 (9th Cir. 2020). If it does not, courts proceed to step two, which asks whether the trade dress has "aesthetic functionality." *Id.*

When analyzing both utilitarian and aesthetic functionality, courts do not dissect the trade dress into its component parts. "The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, functional elements that are separately unprotectable can be protected together as part of a trade dress." *Checks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (internal quotations omitted); *see also Blumenthal*, 963 F.3d at 867 ("[A] product's overall appearance is necessarily functional if *everything* about it is functional, not merely if *anything* about it is functional.") (emphasis in original). A trade dress as a whole is functional when its elements are configured the way that they are configured because the product works best in that configuration. *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir. 2002).

### 1. Step One: Utilitarian Functionality

"A claimed trade dress has utilitarian functionality if it is essential to the use or purpose of a product or affects its cost or quality." *Blumenthal*, 963 F.3d at 865. Courts use four factors to analyze a trade dress's utilitarian functionality: (1) whether the design yields a utilitarian advantage; (2) whether alternative designs are available; (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998). For each factor, Vans has created a triable issue of fact.

### a.  Factor 1: Utilitarian Advantage

On the first factor, courts ask whether a trade dress's features "constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1012 (9th Cir. 1999) (cleaned up). In many of the cases where the Ninth Circuit found that a trade dress is functional as a matter of law, the plaintiff was seeking protection for the shape of a purely utilitarian product. *See, e.g., id.* (pocket knife); *Tie Tech*, 296 F.3d at 785 (tool to cut people out of wheelchairs); *Seacalt S.A. v. Wuxi Shenxi Const. Mach. Co., Ltd.*, 668 F.3d 677, 687-88 (9th Cir. 2012) (piece of industrial machinery). In each of those cases, the shape of the product was driven by its function, indicating that consumers bought the allegedly infringed product because they desired the product itself—not because who made the product.

Vans' shoes are far different from these purely utilitarian products. Of course, Vans' shoes, and each component of them, serve some function. But it does not follow that "the[ir] overall design" is functional. *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2017 WL 9511731, at * 3 (C.D. Cal. May 1, 2017). As one of Vans' witnesses stated, there are thousands of different shoe configurations that can still serve the function of a skate shoe. PSDF # 53. Each of those designs, like Vans' shoes, will have supports so the upper can stand straight as well as stitching to keep the shoe together. But "[t]hese minor accommodations of practical necessity do not" automatically render Vans' asserted trade dress functional. *Toyo Tire*, 2017 WL

9511731, at * 3. Vans has established a triable issue of fact over whether its configuration of elements, all of which serve some functional purpose, is demanded by practical necessity.

The core of ACI's argument is that, because every single element of Vans' trade dress is functional, the trade dress as a whole is functional. On its own terms, the argument fails. There are factual disputes regarding whether several individual elements of Vans' trade dresses are functional.

Consider first the stitching element of Vans' trade dresses. Vans' witness conceded that the stitching serves the normal stitching function of holding Vans' shoes together. DSUF # 45. But ACI has not established that the placement, shape, or prominence of these stitches serves a utilitarian function such that others would be competitively disadvantaged if they could not copy Vans' stitching pattern. Similarly, while Vans' side stripe helps support the top part of the shoe, there is no indication that the shape or placement of the side stripe mark is *uniquely* capable of providing that support. Thus, the side stripe is not a necessary part of the benefit—a shoe with a supported upper—that a consumer hopes to buy. *See K-Swiss, Inc. v. USA AISIQI Soes, Inc.*, 291 F. Supp. 2d 1116, 1122 (C.D. Cal. 2003) (denying summary judgment on the issue of functionality when there were shapes other than that of the plaintiff's logo that could support the upper part of a shoe). Regardless, Vans seeks protection for the placement of its side stripe on the shoe. It is undisputed that the placement of the side stripe is driven by aesthetic, not utilitarian, considerations.[5] *See* DSUF # 56.

Vans also asserts protection for several aspects of their sidewall. For instance, Vans trade dress description includes the "three-tiered grooved appearance" on the sidewall. The three-tiered grooved appearance is created by layering and wrapping three pieces of foxing tape. Vans' process of layering and wrapping foxing tape helps ensure that the sidewall is a consistent height around the shoe, that the sidewalls are uniform among different pairs of Vans' shoes, and that Vans are flexible but not flimsy. ACI thus maintains that Vans' use of foxing tape, and by extension the three-tiered grooved sidewall, is necessary for a cost-effective and repeatable manufacturing process for flexible shoes. Opp'n at 13. ACI's argument is somewhat

---

[5] The reason for the distance between the bottom of the side stripe and the foxing is to make sure additional stitching can be placed between the eye stay and the side wall.

inconsistent with its past practice. Some of ACI's shoes, instead of using foxing tape, create a similar three-tiered grooved appearance through use of a mold and drawn-on lines. PSDF # 34. Thus, the functionality of the three-tiered grooved appearance, which is created by the foxing tape, is a factual question about which reasonable jurors could differ.

Therefore, the first *Disc Golf* factor weighs against granting summary adjudication.

### b. Factor 2: Alternative Designs

There are alternative designs of skate shoes available, indicating that protecting Vans' trade dress will not hinder competition. *Cf. Inwoods Labs.*, 456 U.S. at 850 n.10. After the Court's PI Order, ACI began selling a new line of skate shoes that do not include several elements of Vans' protected trade dress. ACI's new line of skate shoes is depicted below.



These shoes have little in common with Vans' OLD SKOOL and SK8-HI trade dresses. Therefore, a reasonable jury could infer that alternative designs of commercially-viable skate shoes are available. Accordingly, the second *Disc* Golf factor weighs against granting summary adjudication.

### c. Factor 3: Advertising

Nor is Defendant entitled to judgment as a matter of law that the third factor—whether Vans' advertising touts the utilitarian advantages of their shoes—favors them. Vans' Vice President of Product Development stated that he is not aware of "any advertisements that have ever claimed that the overall appearance of Vans' shoes (i.e., the combination of elements that make of Vans' trade dress rights) provides any sort of functional advantage." DSDF # 57. ACI has not identified any advertisement contradicting that testimony. Thus, this factor weighs against granting ACI's motion.

### d.  Factor 4: The Simplicity and Inexpensiveness of the Trade Dresses

Finally, there is a factual dispute regarding the simplicity and expensiveness of Vans' design. ACI uses a vulcanization process similar to that of Vans for some of its shoes, but others are made through an alternative method called cold processing. PSUF # 90-91. The parties' dispute which method is cheaper and simpler. *See* DRPUF # 91 (noting there are "various considerations affecting whether or not vulcanization is more or less simple than cold processing"). This factual dispute precludes the Court from determining the weight of the final factor on summary judgment.

None of the *Disc Golf* factors weigh in favor of granting ACI's motion for summary adjudication that Vans' OLD SKOOL and SK8-HI trade dresses are utilitarianly functional. Thus, the Court continues to the second step, which is to determine aesthetic functionality.

### 2.  Step Two: Aesthetic Functionality

"A claimed trade dress has aesthetic functionality if it serves an aesthetic purpose wholly independent of any source identifying function such that the trade dress's protection would impose a significant non-reputation-related competitive disadvantage on its owner's competitors." *Blumenthal*, 963 F.3d at 865 (internal quotations omitted). "[T]he inquiry is whether, if one seller were given exclusive rights to use the claimed trade dress, other sellers would be forced to use alternative designs that make their products more costly to sell, or for which consumers' willingness to pay would be lower for reasons having nothing to do with the reputation of any source." *Id.* Where it is arguable that an asserted trade dress "serve[s] in part a source-identifying function," the issue of aesthetic functionality must go to a jury. *Millennium Labs., Incv. v. Ameritox, Ltd.*, 817 F.3d 1123, 1131 (9th Cir. 2016).

Here, Vans has created a triable issue of fact regarding whether its trade dress serves a source-identifying function. For instance, Vans places and proportions its side stripe on its shoes so that the mark can be easily visible to others. DSUF # 54. This choice indicates that some elements of Vans' trade dresses "serve in part a source-identifying function." *See Millennium Labs.*, 817 F.3d at 1131.

1    Therefore, the aesthetic functionality of Vans' SK8-HI and OLD SKOOL trade dresses

2    is a question for the jury.

3                                                                              ***

4    Although many elements of Vans' trade dresses serve some function, ACI has not shown

5    that Vans' trade dresses as a whole are functional. Protecting Vans' trade dress would not leave

6    competitors without an economically viable method to produce skate shoes. While those other

7    skate shoes will have components that serve the same function as the function served by

8    elements of Vans' trade dress, a reasonable jury could conclude that a competitor could create a

9    similarly performing but non-infringing skate shoe. For this reason, ACI's motion for summary

10   adjudication that the SK8-HI and OLD SKOOL trade dresses are functional is denied.

11   **B.  Whether Vans' trade dress description is too vague**

12   A plaintiff must clearly describe the elements of its trade dress at the summary judgment

13   stage. *See EZ Pedro, Inc. v. Mayclin Dental Studio, Inc.*, 284 F. Supp. 3d 1065 (E.D. Cal.

14   2018); Thomas McCarthy, 5 MCCARTHY ON TRADEMARKS AND UNFAIR

15   COMPETITION § 8.3 (5th ed. 2023) ("All courts agree that the elements of the alleged trade

16   dress must be clearly listed and described."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*,

17   549 F. Supp. 2d 1168, 1175 (N.D. Cal. 2007) (requiring the plaintiff to provide "a complete

18   recitation of the concrete elements of its alleged trade dress"). Courts have identified two

19   rationales for this requirement. The first is administrability: Without the requisite specificity,

20   courts and juries cannot "evaluate how unique and unexpected the design elements are in the

21   relevant market." *EZ Pedro*, 284 F. Supp. 3d at 1073 (quoting *Landscape Forms, Inc. v.

22   Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)). Second, a plaintiff's inability to

23   wrangle in the specifics about what makes his product distinct is indicates that he seeks

24   protection for a generic and therefore "unprotectable style, theme, or idea."[6] *Landscape Forms*,

25   113 F.3d at 381; *see also Kendall-Jackson Winery, Ltd. V. E. & J. Gallo Winery*, 150 F.3d

26   1042, 1048 (9th Cir. 1998) (establishing that generic trade dresses are not protectable).

27

28   ---
     [6] "The courts have held that a package or product shape can lack protection as being 'generic' if the trade dress is defined as a mere product theme or style of doing business or is such a hackneyed or common design that it cannot identify any particular source." McCarthy, *McCarthy on Trademarks* § 8:6.50.

ACI argues that two elements of Vans' trademark descriptions fail this particularity requirement. First, ACI objects to Vans' description of its stitching. Mot. at 6-8. The OLD SKOOL trade dress description includes "visible stitching, including where the eyestay meets the vamp." DSUF # 6-7. Vans' SK8-HI trade dress description includes "visible stitching, including separating the individual ankle collar corrugations." DSUF # 8-9. Defendant argues that "visible stitching" is vague because its meaning "varies based on what is 'visible' to each person." Mot. at 8.

ACI's argument is not persuasive. "Visible stitching" is readily definable—it is stitching that is apparent to the eye. The phrase is much more definite and clearer than phrases that have failed the particularity requirement. *Compare Walker*, 549 F. Supp. 2d at 1176 (concluding that terms such as "complex," "rustic," and "weathered" were not sufficiently definite) *with adidas America, Inc. v. Skechers USA, Inc.*, 2017 WL 3319190, at * 8 (D. Or. August 3, 2017) (finding that a trade dress that included "defined stitching across the sides of each shoe" was sufficiently definite). Vans further clarified the meaning of "visible stitching" during discovery, where it informed ACI that "visible stitching" was all the white stitching on this shoe:



DSUF # 24. Although Vans' use of the word "including" following "visible stitching" indicates that what follows is not a complete recitation of its allegedly protected stitching, it is not difficult for the Court, a jury, or ACI to determine what fills out the remainder of that list— it is all other instances of stitching on the shoe that is visible.  Thus, the "visible stitching" element of Vans' trade dress is sufficiently definite.

Second, Vans' final element of its trade dresses is the "placement and proportion of" the other elements of its trade dress. ACI objects to Vans' use of "placement and proportion" as vague. Mot. at 10. But this phrase, if anything, makes the trade dress definition more definite. It informs Defendant that Vans is not asserting protection over all aspects of the shoe. Rather, a shoe infringes only when the shoe has similar elements arranged in a similar manner as Vans' shoes.

Thus, Defendant's motion for summary adjudication that Vans' trade dress description is fatally vague is denied.

## C. Whether Vans is estopped from asserting its OLD SKOOL and SK8-HI dresses

Defendant argues that Vans should be estopped from claiming the foxing stripe as part of its trade dress. Opp'n at 20. In 2022, Vans disclaimed exclusive use of the foxing stripe apart from the trade dress that it presented to the USPTO. DSUF # 72. ACI asserts that Vans' trade dresses asserted in this lawsuit, despite including other elements, effectively seek protection for the foxing stripe alone. Reply at 17-18. Therefore, according to ACI, Vans should be estopped from alleging its asserted trade dresses. Id. The Court disagrees.

The Lanham Act provides that "no disclaimer" made during the registration process "shall prejudice or affect the applicant's or registrant's rights then existing or thereafter arising in the disclaimed matter." 15 U.S.C. § 1056(b). This provision allows a registrant to seek trademark protection over matter that it explicitly disclaimed to the USPTO in a lawsuit. For instance, in *Official Airlines Guides, Inc. v. Goss*, 856 F.2d 85 (9th Cir. 1988), the plaintiff disclaimed exclusive use of the phrase "Travel Planner" when registering the "Official Airlines Guides Travel Planner" mark. *Id.* at 86. In a later lawsuit where the plaintiff sought exclusive use of the phrase "Travel Planner," the Ninth Circuit concluded that plaintiff's previous disclaimer to the USPTO did not estop it from asserting common law rights in the phrase. *Id.* at 87.

Here too, even if ACI is correct that Vans' trade dress definition amounts to a claim to the foxing stripe alone, Vans' disclaimer to the USPTO does not estop it from seeking exclusive use of the foxing stripe in this lawsuit. *See Official Airlines Guide*, 856 F.2d at 87.

Therefore, ACI's motion for summary adjudication based on estoppel is denied.

**D. Whether Vans can succeed on its Unfair Competition Claims**

ACI moves for summary adjudication on "Vans' Unfair Competition Claims" under 15 U.S.C. § 1125(a) and Cal. Bus. & Prof. Code § 17200. Mot. at 21. The parties agree, and case law confirms, that these claims are derivative of Vans' trademark/trade dress infringement claims. *See* Mot. at 22; Opp'n at 24; *Int'l Order of Job's Daugthers v. Lindeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980) ("[F]ederal and state laws regarding trademarks and related claims of unfair competition are substantially congruent."). Because Vans' trademark/trade dress infringement claims cannot be decided at this stage in the litigation, neither can the derivative unfair competition claims. Therefore, ACI's motion for summary adjudication on Vans' unfair competition claims is denied.

**E. Whether Vans can seek protection for unregistered marks under 15 U.S.C. § 1114**

The parties agree that Defendant cannot be liable under under 15 U.S.C. § 1114 for infringement of Plaintiff's unregistered trademarks or trade dress. Mot. at 5; Opp'n at 4. Thus, the Court grants summary adjudication in Defendant's favor on Vans' Section 1114 claim to the extent that those claims allege infringement of Vans' unregistered trademarks and trade dress.

**IV.     DISPOSITION**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion. Specifically, the Court rules as follows:

- ACI's motion for summary adjudication that Vans' trade dresses are functional is **DENIED**;

- ACI's motion for summary adjudication that Vans' trade dress description is vague and therefore generic is **DENIED**;

- ACI's motion for summary adjudication that Vans is estopped from asserting the OLD SKOOL and SK8-HI trade dresses is **DENIED**, and

- ACI's motion for summary adjudication that Vans cannot seek protection for unregistered trademarks/trade dress under 15 U.S.C. § 1114 is **GRANTED**.

DATED: October 11, 2023

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE